## ORR & LINDSEY v. S. V. MOORE ET AL.

### COURT OF APPEALS, TYLER TERM, 1882.

[Published by Request.]

*Injunction.—Right of Creditors.—Attachment Lien.*—Several creditors may join in filing a bill for injunction when they have similar rights with respect to the property of their debtor, and such a bill, relating as it does, to one subject matter, would not be multifarious. Without an attempt

to decide between the conflict of authorities as to whether a creditor with an acquired attachment lien may resort to equity to relieve the property so held from a fraudulent attempt of the debtor to dispose of the same *Held*, That the facts of this case justifies such resort.

*Jurisdiction of County Court.*—A judgment of the County Court in proceedings by attachment, on a claim in excess of one thousand dollars is void.

Appeal from the County Court of Kaufman county—Opinion by Hurt, J.

The facts of this case are as follows : On the 28th day of December, 1881, S. V· Moore instituted suit by attachment in the County Court of Kaufman county against S. T. Carelock on two promissory notes, amounting, in the aggregate, to $1050.10 Said attachment was levied on the goods and merchandise of Carelock, which was fully described. On the day following the institution of said suit, Carelock accepted service and waived notice and citation. On the 19th of January, 1882, judgment was rendered in said suit in favor of Moore and against Carelock for the sum of $1059.10. besides interest, and costs, and a foreclosure of the attachment lien on said goods. On the 11th of February, 1882, the said Moore procured from the County Court an order for the sale of said goods, that the proceeds might be applied to the payment of the Moore judgment. The sheriff of Kaufman county advertised the goods for sale, and was proceeding to sell the same, when restrained by this bill of injunction.

On the 7th day of February, 1882, Orr & Lindsey, of St. Louis, and Bailey & Co., of Philadelphia, instituted separate attachment suits against the said S. T. Carelock. The claim of the former amounts to $342.45, and that of the latter to $338.70. Both suits were brought in the County Court of Kaufman county. Said writs of attachment were levied on the same goods attached in the case of Moore v. Carelock.

The said Orr & Lindsey and Joel J. Bailey & Co., believing that the judgment in Moore v. Carelock was absolutely null and void for want of jurisdiction in the court that rendered it, and because the claim of Moore was fictitious and fraudulent as against

them, they joine. in the petition for injunction, which is set out in the record.

Appellees filed an answer to said bill February 28, 1882, consisting of a general demurrer, general denial and a special answer of S. V. Moore. At the same time they made a motion to dissolve the injunction. To said answer appellants filed special exceptions. The court overruled the exceptions, and sustained appellees' general demurrer to the bill. Appellants declining to amend, the court rendered judgment in favor of appellees, dissolving the bill at the costs of appellants, to which ruling of the court appellants excepted and saved their bill of exceptions, and gave notice in open court of appeal to the Court of Appeals.

Did the court err in dissolving appellants, bill for injunction upon the demurrer and answer of defendants?

The charges that Carelock was insolvent and had no other property out of which to satisfy aprellants' debts; that their claims were valid, bona fide debts, and that it would require all the goods in question to satisfy them; that they had filed suits and acquired attachment liens on said goods; that the judgment of Moore v. Carelock was null and void; that the County Court of Kaufman county did not have jurisdiction to render said judgment; that the subject matter of the same exceeded $1000; that the claim of Moore v. Carelock was fictitious and fraudulent; that said suit of Moore v. Carelock was instituted through the fraud and collusion of Moore, Carelock and S. W. Wallace, for the purpose of cheating and defrauding appellants, who were creditors of said Carelock; that if said goods were sold and the proceeds appropriated to the payment of the pretended judgment of Moore that appellants would lose their debts, and suffer an irreparable injury.

The bill for injunction further charges that the attachment suit of Moore v. Carelock was instituted with the knowledge and cons nt of said Moore, Wallace and Carelock, with the understanding and agreement between them that said Carelock was to be unharmed, and should retain his interest and rights to said goods, and that said attachment should be held to force creditors to Carelock to compromise and settle with him for sums greatly less than

their just and lawful demands; that in furtheranc> of said fraudulent scheme the said Carelock accepted service in said suit of Moore the next day after it was filed, and on the same day sent letters to his many creditors, notifying them that he had been attached, etc.; that said Carelock declined to defe: d said Moore's attachment suit, and declined to replevy the goods when other creditors offered to make bond for him and test the validity of the Moore claim.

A part of defendants answered by demurrer and general denial only. S,.V. Moore answered by her co-defendant and agent, S. W. Wallace.

Did the answer, conceding it to be full and positive, of S. W Wallace, authorize the court to dissolve the injunction? We think not. The rule is : When fraud is charged in the bill against several parties, the answer must be from all the defendants. Mr. High, in his work on injunctions, says : "Courts of equity are usually more strict in requiring a positive answer from all the defendants before dissolving any injunction granted on ther grounds of fraud, than in ordinary cases. And when the bill implicates two defendants in the same charge of fraudulent conduct the court will require the answer of both defendants before granting a motion to dissolve." (High on Injunctions, Sec. 1532, Second Edition.)

The court below, however, did not dissolve the injunction upon the answer, but sustained the general demurrer of defendants. Two grounds are urged why the injunction should have been dissolved :

1. Because several creditors cannot join in this bill, having filed separate suits for their respective debts.

2. The appellants were not entitled to relief by injunction under the circumstances of this case.

The first ground we think is untenable. That several creditors may join in filing a bill for injunction, when they have similar rights with respect to the property of their debtor, is no longer an open question. Indeed, to prevent a multiplicity of suits, this course should be commended. Mr. Bump, on this subject, says :

"Several creditors may join in filing a bill, when they have similar rights with respect to the property of their debtors. it is therefore proper for them to unite in the same suit for effecting the same end. Such a bill is not multifarious, for it relates to one subject matter." (Bump Fraud. Con., pp. 533 and 534.)

The second ground : Were the appellants entitled to the injunction under the circumstances? We think so. A case quite, if not equally analagous with the one in hand, came before the Supreme Court of California. In that case the learned judge who delivered the opinion of the court says : "It is a general rule that a court of equity will not take jurisdiction of a controversy if the parties have an adequate remedy at law. And in accordance with this rule courts of chancery have repeatedly reused to interfere at the instance. of creditors and set aside fraudulent conveyances of the debtor's property, until the creditor has first exhausted his remedy by judgment, execution, and return of *nulla bona*. For aught the court might know, the claim might be illegal, or there might be sufficient property of the debtor to satisfy the judgment, aside from that fraudulently transferred. The modern decisions of some of the courts of the United States seem, however, to have relaxed the severity of the English rule, and in some cases it has been held that a creditor who has acquired a lien under the attachment laws of a State may apply to a Court of Chancery without first proceeding to judgment. Without expressing any preference for the modern doctrine, we are satisfied that the facts and circumstances of this case take it out of the ancient rule. The debt and insolvency of the defendants, as well as every other material allegation of the bill, except that of fraud, are confessed by the answer, and it would be requiring the the plaintiff to do a vain act if they should be compelled to wait their judgment at law, when it is acknowledged that the only effect would be a return of *nulla bona*, and that the property which they have attached in the meantime would have passed into the hands of *bona fide* purchasers under color of judicial sale, and be lost to them forever. Fraud is one of the primary subjects of equity jurisprudence, and it is not to suppose that a Court of Chan-

cery would refuse to entertain jurisdiction in a case like the present, when the sole issue was one of fraud, and where, by such refusal, the fraud complained of would be most successfully consummated." (Heyneman v. Dannenberg, 6 Cal , 376.)

To show the analogy between this and the one at bar, we will insert the allegations of the bill in the case last cited. The bill alleged : "That the property about to be sold under execution on said judgment has been attached by plaintiffs subsequent to an attachment in the action of Dannenberg. That the judgment was obtained by Dannenberg with the intent to defraud Morris. and there was no actual indebtedness of Morris to Dannenberg, and that the property is about to be sold on execution under the direction of Dannenberg for the benefit of Morris; th.t Morris is utterly insolvent, and has no other property but that about to be sold under the execution." Morris and Dannenbeag filed separate answers denying the fraud and alleging that the Dannenberg judgment was obtained on a note for an actual, *bona fide* debt, but admitting all the other material allegations in the bill."

What striking similarity, not only between the allegations in the bill, but also in the answers, when stripped of their verbosity and reduced to issuable proportions. There is not an allegation in the California case but that its counterpart can be found in this case. The answer in that is as positive, clear and full as in this. In that, the *bona fide* of the defendants' claim is set up and the fraud denied; in this answer nothing more is done. In addition to this, the bill before us charges and the record sustains the charge, that the court has no jurisdiction of the amount of the judgment obtained by Mrs. Moore, and was consequently void. This, as we before stated, is sustained by the record. The judgment being absolutely void, will equity give attaching creditors an injunction to prevent the sale of the property under such a judgment? Under the facts and circumstances charged in the bill we are clearly of the opinion that it will.

We are of the opinion that the court erred in sustaining the general demurrrer to the bill and dissolving the injunction, for which the judgment is reversed and the cause remanded.